[Cite as *In re M.H.*, 2012-Ohio-1561.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. Patricia A. Delaney, P .J.<br>Hon. John W. Wise, J. |
| M.H. | Hon. Julie A. Edwards, J. |
| A.B. | Case No. 2011 CA 00279 |
| MINOR CHILD(REN) | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common
Pleas, Juvenile Division, Case Nos.
2010 JCV 00331 and 2011 JCV 00517

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 2, 2012

APPEARANCES:

For Appellee                                   For Appellant

JAMES B. PHILLIPS                    ALLYSON J. BLAKE
STARK COUNTY JFS                   122 Central Plaza North
221 Third Street SE                       Suite 101
Canton, Ohio  44702                     Canton, Ohio  44702

*Wise, J.*

{¶1}    Appellant Helen Haught appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of her two minor children to Appellee Stark County Department of Job and Family Services ("SCDJFS"). The relevant facts leading to this appeal are as follows.

{¶2}    Appellant is the mother of the two children at issue in this matter, M.H., born in 2002, and A.B., born in 2011. The alleged father of M.H. is deceased. The alleged father of A.B. is Raleigh Baldwin, who is not a participant in the present appeal.[1]

{¶3}    On April 1, 2010, SCDJFS filed a complaint in the Stark County Court of Common Pleas, Juvenile Division, case no. 2010JCV00331, alleging M.H. to be a dependent, neglected, and/or abused child. SCDJFS filed the complaint based on concerns about, inter alia, appellant's drug usage and emotional/mental health issues, and appellant repeatedly falsely claiming the child had certain medical issues.

{¶4}    The matter proceeded to an adjudicatory hearing. On June 24, 2010, the trial court issued a judgment entry finding M.H. to be dependent. Regarding disposition, M.H. was ordered to remain in the temporary custody of the agency.

{¶5}    A.B. was born in April 2011. On April 8, 2011, several days after her birth, SCDJFS filed a separate complaint in the Stark County Court of Common Pleas, Juvenile Division, case no. 2011JCV00517, alleging A.B. to be a dependent child. The trial court found A.B. to be dependent on June 29, 2011.

---

[1]    Baldwin never followed through on establishing paternity of A.B. (see trial court's Findings of Fact and Conclusions of Law at 9), and appellant does not herein specifically argue that he should have been considered for purposes of placement or custody.

{¶6} Furthermore, on June 29, 2011, appellant stipulated to an extension of temporary custody to the agency in case no. 2010JCV00331.

{¶7} On September 1, 2011, SCDJFS filed a permanent custody motion in each of the two cases.

{¶8} On November 8, 2011, an evidentiary hearing was conducted on the permanent custody motions. Roger Baldwin, the alleged father of A.B., did not appear for the evidentiary hearing.

{¶9} The trial court issued a judgment entry with findings of fact and conclusions of law on November 22, 2011, granting permanent custody of M.H. and A.B. to the agency.

{¶10} On December 16, 2011, appellant filed a notice of appeal as to both juvenile court case numbers. She herein raises the following three Assignments of Error:

{¶11} "I. THE TRIAL COURT ERRED IN FINDING THE CHILD [M.H.] HAD BEEN IN THE CUSTODY OF THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES FOR TWELVE OF THE LAST TWENTY-TWO MONTHS UNDER THE UNIQUE FACTS OF THE INSTANT CASE.

{¶12} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶13} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF

PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

{¶14} In her First Assignment of Error, appellant contends the trial court erred in finding M.H. had been in agency custody for twelve out of twenty-two months. We disagree.

{¶15} R.C. 2151.414 states in pertinent part:

{¶16} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶17} " ***

{¶18} (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶19} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the

date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

{¶20} The record reveals that M.H. was taken into agency custody on April 1, 2010, and remained there throughout the case. Tr. at 7-8. Pursuant to the above statutory guidance, sixty days after April 1, 2010, i.e., May 31, 2010, would be considered the starting date for purposes of the "12 of 22" rule. The permanent custody motion was filed on September 1, 2011, fifteen months after the statutory commencement of agency custody. We note it is considered axiomatic that a trial court may take judicial notice of its own docket. See *Indus. Risk Insurers v. Lorenz Equip. Co.,* 69 Ohio St.3d 576, 580, 1994-Ohio-442. Although appellant presently contends that this case involved "unique circumstances" weighing against invocation of the "12 of 22" rule, we find the record justifies the trial court's reliance on R.C. 2151.414(B)(1)(d).

{¶21} Appellant's First Assignment of Error is overruled.

II.

{¶22} In her Second Assignment of Error, appellant contends the trial court erred in determining that A.B. cannot or should not be placed with her within a reasonable time. We disagree.[2]

{¶23} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his

---

[2] Appellant herein also makes this argument in regard to M.H. However, because we have found no error in regard to the "12 of 22" finding as to M.H., we need only review the "best interest" portion of the permanent custody case as to him. *See, e.g., In re Walton/Fortson Children,* Stark App.No. 2007CA00200*, 2007-Ohio-5819, ¶ 14.* We therefore will focus on A.B. in the second assigned error.

or her judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App.No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Furthermore, it is well-established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* Summit App.No. 21004, 2002-Ohio-3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St .2d 230, 227 N.E.2d 212.

{¶24} R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶25} "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶26} "(b) The child is abandoned.

{¶27} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶28} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."

{¶29} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." See R.C. 2151.414(E)(1).

{¶30} In the case sub judice, the agency presented the testimony of several witnesses and entered two psychological reports regarding appellant. The first witness, SCDJFS ongoing caseworker Cheri Smith noted that appellant's case plan consisted of a parenting evaluation at Northeast Ohio Behavioral Health, drug treatment services at Quest, random urine screens, completion of Goodwill Parenting, and appellant obtaining housing and employment. A second parenting evaluation at Summit Psychological Services was also added to the case plan.

**{¶31}** Appellant completed her parenting evaluation at Northeast Ohio Behavioral Health ("NEOBH"), but did not complete the recommended Dialectical Behavior Therapy ("DBT"), as further discussed infra. She was terminated from Goodwill Parenting on her first attempt. On her second try, she merely received a "certificate of non-compliance." Tr. at 18. She also completed the Quest program, but she tested positive for marijuana just one week before the permanent custody hearing. Appellant also moved several times between her mother's apartment and Raleigh Baldwin's apartment and never obtained satisfactory independent housing. Appellant also failed to obtain employment as per the case plan.

**{¶32}** The court also heard the testimony of psychologist Dr. Corrine Mannino, who discussed appellant's second parenting evaluation at Summit Psychological. Dr. Mannino did not recommend that appellant's children should be returned to her unsupervised custody, noting inter alia that appellant had drug dependence and several mental health issues and was not compliant in taking medication for a seizure disorder, and that appellant's intelligence was in the borderline range.

**{¶33}** The agency also called psychologist Dr. Amy Thomas, who discussed, inter alia, appellant's parenting evaluation at NEOBH. Dr. Thomas diagnosed appellant as having Factitious Disorder, Factitious Disorder by Proxy (i.e., Munchausen's by Proxy), borderline personality disorder, and cannabis dependence. Appellant has, among other things, maintained a belief that M.H. is diabetic, even though he is not. Appellant's IQ was determined to be 72. See Tr. at 48-51. Dr. Thomas concluded that appellant is "fragile" and unable to safely parent. Tr. at 65.

**{¶34}** In regard to DBT therapy, Dr. Thomas agreed that such treatment is not a "cure-all," and she cautioned that she was not optimistic that it would benefit appellant in the near term. Tr. at 81-83. Although appellant contends that appellant's DBT therapy was delayed through no fault of her own, due to the original need for further evaluation of appellant, upon review we hold the trial court did not err in determining that A.B. could not be placed with appellant within a reasonable time or should not be placed with appellant.

**{¶35}** Appellant's Second Assignment of Error is overruled.

III.

**{¶36}** In her Third Assignment of Error, appellant contends the trial court erred in determining that granting permanent custody of M.H. and A.B. to the agency would be in the children's best interests. We disagree.

**{¶37}** We again note that as an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck*, supra. It is also well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children* (Nov. 13, 2000), Stark App.No. 2000CA00244, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

**{¶38}** In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

**{¶39}** "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

**{¶40}** "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶41}** "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

**{¶42}** "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶43}** "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

**{¶44}** In the case sub judice, ongoing caseworker, Cheri Smith, testified that M.H. has had great improvement in his behaviors since the agency obtained temporary custody, and he is no longer requiring his medication for ADHD. He has also made "significant progress" on overcoming his reading and writing delays. Tr. at 106. M.H. has indicated that he wishes to stay with his foster family if he cannot return to appellant. Both M.H. and A.B. are in the same foster placement. According to Smith,

the current foster mother is considering adopting both children and the children have developed a bond with her. The guardian ad litem, Attorney Mary Lou Sekula, expressed concerns about appellant's physical and mental health issues, particularly as they would impact A.B. at her very young age, and Attorney Sekula recommended permanent custody of both children to the agency.

{¶45}   Upon review of the record and the findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody of M.H. and A.B. to SCDJFS was made in the consideration of their best interests and did not constitute an error or an abuse of discretion.

{¶46}   Appellant's Third Assignment of Error is overruled.

{¶47}   For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.


By: Wise, J.

Delaney, P. J.,  and

Edwards, J. concur

_____

_____

_____

                                                    JUDGES

JWW/d 0314

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:                          :
                                           :
    M.H.                                   :
                                           :
    A.B.                                   :      JUDGMENT ENTRY
                                           :
    MINOR CHILD(REN)                       :      Case No.  2011 CA 00279


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.

Costs assessed to appellant/mother.


_____


_____


_____

JUDGES